UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re: )
)
   BIN HAO, ) Case No. 22-10478-BFK
) Chapter 11 (Subchapter V)
              Debtor. )
)

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

This matter comes before the Court on the Motion of the U.S. Trustee ("UST") to Convert or Dismiss this Subchapter V bankruptcy case. (Docket No. 120). The Debtor filed an Opposition to the UST's Motion. (Docket No. 143). The Subchapter V Trustee did not file a response, but she supports the UST's Motion. The Court heard the evidence and the parties' arguments on July 26, 2022. For the reasons stated below, the Court will grant the US Trustee's Motion and will convert the case to Chapter 7.

**Findings of Fact**

The Court, having heard the evidence, makes the following findings of fact.

*A. The Debtor and His Businesses.*

1. The Debtor is an individual residing in Fairfax County, Virginia. He is highly educated and financially sophisticated. He has a master's degree in aerospace engineering and a master's degree in business administration. He is a licensed real estate broker. He was employed by a hedge fund for ten years trading futures and commodities.

2. The Debtor is divorced. He lives in the former marital residence in Herndon, Virginia, which is now owned by a Trust for the benefit of his ex-wife or his children ("the Trust"). When he and his wife first separated, he paid the mortgage with Bank of America and the

1

homeowners' association dues. His ex-wife has since paid off the mortgage. He currently does not pay the Trust any rent.

3.  The Debtor operated a business known as Qidian, LLC ("Qidian"). Through Qidian, he solicited funds from individual investors which were then invested into special purpose vehicles ("SPV's"). The SPV's made mezzanine funding loans to various real estate projects. The largest of the SPV's invested in a real estate project in Miami, which suffered a foreclosure on its property by the senior mortgage lender, resulting in a loss of the SPV investors' money.

4.  The Debtor had $23,279.45 in gross income for 2021. Am. Statement of Financial Affairs at 1, Docket No. 158. He received an additional $9,142.00 in dividends in 2021. *Id*. at 2.

5.  He had $5,650.00 in gross income in 2022 until he filed his bankruptcy petition in April 2022. *Id*.at 1. He had an additional $5,842.00 in dividends for the first four months of 2022. *Id*. at 2.

*B. The Debtor's Schedules and the Continued Meetings of Creditors.*

6.  The Debtor filed a Voluntary Petition under Chapter 11 with this Court on April 20, 2022. (Docket No. 1).

7.  The case was filed under Subchapter V of Chapter 11. *Id.* at 1. Angela Shortall was appointed as the Subchapter V Trustee. (Docket No. 10).

8.  The Debtor represented in his initial filings that "there is no Balance Sheet, Statement of Operations, or Cash-Flow Statement." (Docket No. 6).

9.  The Debtor filed his first set of Schedules and his Statement of Financial Affairs (hereinafter "SOFA") on May 16, 2022. (Docket Nos. 46, 49). The Schedules and/or the SOFA have been amended four times since the initial filings. (Docket Nos. 82 (and 83, 85), 94, 106, 158 (and 159)).

10. The first meeting of creditors was scheduled for May 26, 2022. (Docket No. 11). It has been adjourned for the production of additional information four times, to June 8, 2022, June 23, 2022, July 5, 2022, and August 2, 2022. (Docket Nos. 61, 70, 97, 110).

11. The Debtor listed his monthly gross income as $2,000.00, plus dividends of $1,994.78. Schedule I, at 1—2, Docket No. 46. He stated his monthly disposable income as negative ($4,649.21). *Id*. at Schedule J, 3.

12. The Debtor did not disclose a PayPal account, nor did he disclose two cryptocurrency accounts with Coinbase and Kraken in his Schedules. (Docket Nos. 82, 83, 85, 94, 106, and 158). The Debtor disclosed these accounts in his most recent Amended Schedules. Am. Schedules/Statements at 9, Docket No. 159.

13. The Debtor also had an account at Citizens Bank, which he did not disclose. He testified that the account was originally with HSBC and that he did not realize that he had an account with Citizens. He disclosed this account in his most recent Amended Schedules. *Id*. at 4.

14. The Debtor owns membership interests in Qidian and in six limited liability companies: BAH Investments, LLC, Weymoore Ventures, LLC, Binhai Invetments, LLC, Qpoint 21, LLC, HH Little Havana, LLC and 1407 Kindred, LLC. UST's Ex. 3 at 12, Docket No. 148.[1]

15. Binhai Investments, LLC, owns a 50% interest in BAH Capital, LLC. *Id*.

16. The Debtor testified that he "divested" Binhai's investment in BAH Capital in January or February 2022, for no consideration.

17. On June 22, 2022, the Debtor filed Amended Schedules. (Docket No. 94). In the Amended Schedules, he disclosed a 50% membership interest in Prolandian, LLC, which was not

---

[1] The UST's Exhibits will be referred to as "UST's Ex. __." The Debtor's Exhibits will be referred to as "DR's Ex. __."

3

previously disclosed. *Id.* at DR's Ex. 1. Prolandian was established as a construction business when the Debtor and his ex-wife were married. They each own 50% of Prolandian.

18. In his SOFA, the Debtor stated "none" (other than those listed in the Attachment to the SOFA, discussed below), when asked about transfers to family members within the year preceding the bankruptcy case. SOFA at 5, Docket No. 49.

19. In fact, the Debtor made two transfers to his cousin during that period of time. The Debtor testified that he understood this question to be asking about transfers of real estate and, not transfers of personal property such as cash.[2]

20. The Debtor has disclosed that the bankruptcy estate may have certain claims against the Trust or his ex-wife for: (a) the transfer of 1300 Cabin Creek Road in Herndon (which is now the Debtor's residence); (b) the transfer of a fractional interest in 2208 Jenson Place also in Herndon; and (c) the transfer of $300,000.00. Schedule A/B at 10, Docket No. 46.

C. *The Debtor's Monthly Operating Reports.*

21. The Debtor was not employed when he filed this case. The last time he received a payment from Qidian was in September or October 2021. Since then, he has been doing consulting work on a part-time basis. Schedule I at 1, Docket No. 46. He received one payment as a consultant in February 2022, and no payments since then. *Id.* at 1—2.

22. He started a new job in July 2022, at a salary of $10,000 per month. Am. Schedule I at 1, Docket No. 159.

23. The Debtor's April 2022 Monthly Operating Report ("MOR") shows $3,995.00 in income and $4,864.00 in expenses, for a loss of ($869.00) for the month. April MOR at 9, Docket No. 60.

---

[2] These transfers still are not listed in the Debtor's Amended SOFA. *See* Debtor's Am. SOFA at 6—7, Docket No. 158.

24. The May 2022 MOR shows receipts of $1,995.00 and expenses of $1,102.00, for a gain of $893.00. May MOR at 9, Docket No. 93.

25. The June 2022 MOR shows receipts of $1,945.00 and expenses of $1,653.00, for a positive net cash flow of $292.00. June MOR at 3, Docket No. 139).

26. The Debtor did not file his MOR for July, as of September 2, 2022 (it was due on August 15, 2022).

### D. The Claims in the Case.

27. The amount of the claims in this case is unclear. The Debtor's Amended Schedules indicate that there may be as much as $41,197,667.11 in claims. Am. SOFA, Official Form 106Sum at 1, Docket No. 159.

28. The Debtor acknowledges that he has a pre-petition domestic support obligation to his ex-wife in the amount of approximately $76,000.00. Schedule E/F at 14, Docket No. 46.

29. He further acknowledges that he has pre-petition, priority tax obligations in the amount of approximately $65,000.00. *Id*. at 15. As of the hearing on this Motion, he has not filed his 2021 tax returns.[3]

30. The Court's Claims Register indicates that claims totaling $10,443,129.07 have been filed in the case. The Debtor disputes many of these claims, stating that for many of them he did not sign a personal guaranty (although this might not preclude liability based on alleged fraud or securities laws theories). The Debtor testified that, in his best judgment, there are probably about $3,600,000.00 in allowable unsecured claims in the case.

### E. The Debtor's Post-Petition Domestic Support Obligations.

---

[3] The Debtor filed an Application to Employ an accountant to prepare his 2021 income tax returns on August 30, 2022, four months into the case. (Docket No. 176).

31. The Debtor acknowledged that he was in default in his post-petition domestic support obligations in the amount of $3,000 to $4,000.

32. He is seeking to reduce his ongoing support obligations. (Docket No. 52)

F. *The Debtor's Plan of Reorganization.*

33. The Debtor filed a Plan of Reorganization on July 19, 2022 (hereinafter the "Plan"). (Docket No. 136).

34. The Plan calls for the liquidation of the Debtor's non-exempt assets and a distribution of the proceeds to the creditors. *Id.*

35. The Plan calls for the Debtor to pay a quarterly Dividend to the unsecured creditors of between **$5,877.44** and **$10,523.32**. *Id*. at Ex. 2, 1.

36. The Plan assumes that the Debtor will have his salary of **$10,000.00** per month, plus **$1,500** per quarter in consulting fees and **$6,068.00** per quarter in "other" income. *Id*. The source of the other income is not identified. The Plan assumes that the Debtor's income will increase approximately 15% over the 60-month term of the Plan, from $30,000.00 per quarter to $35,096.00 per quarter. *Id*.

37. Aside from the potential sales of assets (which have an unknown value), and the possibility of any recoveries from avoidance actions (again, of unknown value), the Debtor proposes to pay the entire creditor body a total of approximately $166,000.00 over a five-year period. *Id*. at 6.

38. Of this amount, approximately $134,000.00 would be paid to the domestic support obligations and the tax debt, and the remaining amount of $31,000.00 would be paid to the unsecured creditors. *Id*. at Ex. 1.[4]

---

[4] The Plan incorrectly places all of the priority claims into one class. *See id*. at 4—5 (stating that priority claims are to be paid "on par with the holder of any post-petition support arrearage after the payment of any allowed

39. According to the Debtor, this would result in a distribution to the unsecured creditors of **0.0045** cents on the dollar, that is, less than one-half of one cent on the dollar. *Id*. at 2.

40. The Plan calls for the Debtor to liquidate his interests in Weymoore Ventures, LLC, BinHai Invetments, LLC, Prolandian, LLC, BAH Investments, LLC, Qpoint 21, LLC, HH Little Havana, LLC and 1407 Kindred, LLC. *Id*. at 9.

41. The Liquidation Analysis attached to the Plan states that the Debtor would have $36,944.81 in assets available for the creditors in a hypothetical liquidation, not including liquidation of the limited liability interests or the litigation claims. *Id*. at Ex. 1.

G. *The Debtor's Amended Schedules I and J.*

42. On August 9, 2022, the Debtor filed Amended Schedules I and J. (Docket No. 159).

43. His Amended Schedule I shows gross income of $10,000.00 per month, plus $2,022.75 in investment income. *Id*. at Am. Schedule I, 1—2.

44. The Debtor's Amended Schedule I does not show any income from consulting. *Id*.

45. The net income on Amended Schedule J – that is, the amount the Debtor has available to pay the Dividend under the Plan – is **$2,033.56.** *Id*. at Am. Schedule J, 3.

H. *The Debtor's Amended Plan.*

46. On August 12, 2022, the Debtor filed an Amended Plan. (Docket No. 167).

47. The income numbers in the Amended Plan are the same - $30,000.00 in salary per quarter, $1,500.00 in consulting income per quarter and $6,068.00 in "other" income per quarter. The salary increases are also the same. *Id*. at Ex. 2.

---

administrative claims . . ."). This is incorrect in two respects. First, post-petition support payments are administrative claims and are entitled to be paid first. 11 U.S.C. § 507(a)(1). Second, pre-petition domestic support obligations are a first priority and are entitled to be paid ahead of all other priority claims. *Id*.

7

48. This time, however, the Amended Plan calls for a distribution of **$0.016** – or one and a half cents on the dollar – to the unsecured creditors, over the five-year life of the Amended Plan. *Id*. at 2.[5]

*I. The U.S. Trustee's Motion on the Debtor's Eligibility Under Subchapter V.*

49. The UST has filed an Objection to the Debtor's Designation as a Subchapter V Small Business Debtor, arguing that the Debtor is ineligible for Chapter V. (Docket No. 137). The Court set the UST's Motion for a hearing at the same time as the confirmation hearing on the Debtor's Amended Plan on September 13, 2022. (Docket No. 150).

50. The Debtor filed a response to the UST's Objection (Docket No. 249). The Debtor states that he has elected not to proceed under Chapter 11 Subchapter V. *Id*.

*J. The Professionals' Fee Applications.*

51. Finally, the Debtor's counsel has filed a First Interim Fee Application. (Docket No. 160). In the Application, counsel sought an award of $22,820.00 in fees and $3,689.52 in expenses, for a total of $26,511.52. *Id*. at 1—2. Counsel is holding a retainer in the amount of $15,000.00. *Id*. at 1.

52. The Court granted the Fee Application and allowed the Debtor's counsel his fees and expenses in full. (Docket No. 174). After the application of the Debtor's counsel's retainer, the bankruptcy estate will owe counsel $11,509.52.

53. Ms. Shortall, the Subchapter V Trustee, has not yet filed a Fee Application.

**Conclusions of Law**

---

[5] This is triple the proposed distribution of one-half cent on the dollar, in the Debtor's original Plan. It is not clear how the proposed distribution tripled, where the income numbers remained constant from the Plan to the Amended Plan, and where the two Plans make the same assumption as to the amount of allowed claims. *Compare* Chapter 11 Small Business Subchapter V Plan at 2, fn. 2, Docket No. 136 ("This estimated distribution share is based upon the face value of the Claims Register ($10,443,129.07)."), *with* Am. Chapter 11 Small Business Subchapter V Plan at 2, fn. 2, Docket No. 167 ("This estimated distribution share is based upon the face value of the Claims Register ($10,443,129.07 number)".).

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the U.S. District Court for this District entered August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).

In 2019, Congress enacted the Small Business Reorganization Act of 2019 ("SBRA"), with an effective date of February 2020. Pub. L. 116-54. The Act brought into being Sections 1181-1195 of the Bankruptcy Code, known as Subchapter V. *Id*. Debtors who qualify may elect to be treated as small business debtors when they file a petition with the bankruptcy court. *Id*. The purpose of Subchapter V was to make Chapter 11 more streamlined for the debtor and the creditors, thereby making the case less expensive and faster than a traditional Chapter 11 case. H.R. REP. NO. 116-171, at 1 (2019). Although the voting requirements are different under Subchapter V (Debtors need not have an impaired accepting class), the requirements of feasibility and good faith remain. 11 U.S.C. § 1191(a). With four amendments to Schedules (and at least one more amendment contemplated), the meeting of creditors having been continued three times, the U.S. Trustee and the Subchapter V Trustee still requesting information, and the U.S. Trustee questioning the Debtor's eligibility for Subchapter V in the first place, this case has hardly been the fast track to confirmation that Congress envisioned in enacting Subchapter V.

Section 1112(b) of the Code provides that a Chapter 11 case "shall" be converted or dismissed where there is cause. 11 U.S.C. § 1112(b)(1). Section 1112(b) does not define cause, but subsection (b)(4) provides a number of non-exclusive examples.[6] The Court finds that there is cause to convert this case to Chapter 7.

A. *The Debtor's Conduct in this Case.*

---

[6] Section 1112(b)(4) uses the term "includes," which is not limiting. 11 U.S.C. § 102(3).

9

The Court begins with an examination of the Debtor's conduct in this bankruptcy case. Every bankruptcy case carries with it an obligation of good faith. 11 U.S.C. § 1129(a)(3); *See Marrama v. Citizens Bank of Mass.,* 549 U.S. 365, 375 (2007) ("[T]he broad authority granted to bankruptcy judges to take any action that is necessary or appropriate 'to prevent an abuse of process' described in § 105(a) of the Code, is surely adequate to authorize an immediate denial of a motion to convert filed under § 706 in lieu of a conversion order that merely postpones the allowance of equivalent relief and may provide a debtor with an opportunity to take action prejudicial to creditors.") (internal footnotes omitted); *see In re Mitrano,* 472 B.R. 706, 710-11 (E.D. Va. 2012) (explaining that bad faith can negate the debtor's right to choose dismissal in lieu of conversion); *see also In re Ozcelebi,* 639 B.R. 365 (Bankr. S.D. Tex. 2022) (converting a Subchapter V case to a Chapter 7 case for bad faith conduct).

"A comprehensive definition of good faith is not practical. Broadly speaking, the basic inquiry should be whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [the Chapter] in the proposal or plan . . . ." *Deans v. O'Donnell (In re Deans),* 692 F.2d 968, 972 (4th Cir. 1982) (citing 9 COLLIER ON BANKRUPTCY at 319 (14th ed. 1978). The Fourth Circuit has held that a non-exclusive list of factors might include:

> [N]ot only the percentage of proposed repayment, but also the debtor's financial situation, the period of time payment will be made, the debtor's employment history and prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing facts, and any unusual or exceptional problems facing the particular debtor.

*See id.* (stating further that the totality of the circumstances must be examined on a case-by-case basis); *see also Neufeld v. Freeman*, 794 F.2d 149 (4th Cir. 1986) (holding that the court may consider prepetition conduct in determining the good faith in proposing a bankruptcy plan).[7]

---

[7] The UST does not allege, and the Court does not find, that the bankruptcy case was filed in bad faith. The Court, therefore, need not address the subjective bad faith factor under the Fourth Circuit's decision in *Carolin Corp. v.*

The Court finds bad faith conduct on the part of the Debtor for a number of reasons. First, the Debtor has not accurately and timely disclosed all of his assets. He is now on his fourth set of Schedules in the case, each amendment being prompted by inquiries from the UST or the Subchapter V Trustee. He acknowledged that he needs to amend his Schedules again to disclose the PayPal and the cryptocurrency accounts. The Debtor testified that the cryptocurrency accounts had little to nothing in them at the time of the bankruptcy filing, but their value did not override the obligation of disclosure. *See Dean v. McDow*, 299 B.R. 133, 140 (E.D. Va. 2013) ("[T]here is no *de minimis* exception to the Bankruptcy Code's disclosure requirements.") He also failed to disclose Prolandian, LLC, which he owns jointly with his ex-wife.

Second, the Debtor stated "none" when asked about transfers to family members. In fact, he transferred funds to his cousin on two occasions. His testimony on this issue was not credible. It is unlikely that the Debtor, who is highly financially sophisticated, understood the term transfers of "property" to be limited to transfers of real property. SOFA at 3, Docket No. 49. At this point, four months into the case, the Court has no confidence that the Debtor's filings are accurate and complete.

Third, the failure to pay post-petition domestic support obligations is an enumerated cause for dismissal or conversion in the statute. 11 U.S.C. § 1112(b)(4)(P).[8] As of the date of the hearing on this Motion, the Debtor estimated his post-petition domestic support delinquency to be about $3,000 to $4,000. The statute does not have a threshold amount; any default in the payment of post-petition domestic support obligations constitutes cause to convert or dismiss the case. *Id*.

---

*Miller*, 886 F.2d 693 (4th Cir. 1989). The Court does find that the Debtor's Amended Plan is objectively futile, below.

[8] The Debtor's Amended Plan calls for him to pay the post-petition domestic support in quarterly payments of $262.42 over the life of the Plan. Am. Chapter 11 Plan Subchapter V at Ex. 2, Docket No. 167.

11

The Court finds that the Debtor's bad faith conduct throughout this case requires that the case either be dismissed or converted to Chapter 7.

B.  *The Debtor's Amended Plan.*

Alternatively, the Court finds that there is a continuing loss to, or diminution of, the bankruptcy estate coupled with the absence of a reasonable likelihood of rehabilitation. 11 U.S.C. § 1112(b)(4)(A). There are continuing losses because the Debtor is accruing legal fees, and Subchapter V Trustee fees, that his monthly operating reports indicate he has no ability to pay. (Docket Nos. 60, 93, 139). His April 2022 MOR shows zero in income. (Docket No. 60). The MOR for May 2022 shows receipts of $1,945 and disbursements of $1,102. (Docket No. 93). The June MOR shows receipts of $1,945 and a positive cash flow of $345. (Docket No. 139). After application of the Debtor's counsel's retainer, the bankruptcy estate will owe a net amount to counsel of $11,509.52 for the first three months of the case. The Subchapter V Trustee has not yet filed a Fee Application, but she is entitled to payment of her allowed fees, as well. The Debtor has no ability to pay the ongoing professional fees in this case. The latest MOR states that the Debtor had $4,887.00 in available cash as of June 30, 2022 – and this was before the allowance of counsel's fees in the amount of over $25,000.00. June MOR at 2, Docket No. 139.[9]

Further, there is an absence of a reasonable likelihood of rehabilitation because the Debtor's Amended Plan cannot be confirmed on both feasibility and good faith grounds.

    (i)    *Feasibility*.

---

[9] The Debtor's Amended Plan is vague about the timing for the payment of administrative claims. *See* Am. Chapter 11 Plan Subchapter V at 4, Docket No. 167 ("Each holder of an administrative expense claim allowed under § 503 of the Code will be repaid in [specify terms of treatment, including the form, amount and timing of distribution, consistent with Section 1191(e) of the Code] [sic]"). The Court assumes that this is a drafting error that can be corrected by reference to the 60-month cash flow statement attached to the Amended Plan. *Id*. at Ex. 2.

12

The Court first examines the feasibility of the Debtor's Amended Plan. (Docket No. 167). Bankruptcy Code Section 1129(a)(11) applies under Chapter 11, Subchapter V. 11 U.S.C. § 1181(a). Additionally, in order for a plan to be considered fair and equitable, the Court must find either: (a) that the debtor will be able to make all payments under the plan; or (b) there is a reasonable likelihood that the debtor will be able to make all the payments, and the plan provides for appropriate remedies in the event of a default. 11 U.S.C. § 1191(c)(3). The Court finds that the Debtor's Amended Plan in this case meets neither standard – there is no reasonable likelihood that the Debtor will be able to make the payments under the Amended Plan.

Simply put, the Debtor's Amended Plan does not work. According to Amended Schedules I and J, the Debtor has approximately $2,000.00 in monthly disposable income with which to make the Plan payments. Am. Chapter 11 Plan Subchapter V at Ex. 4, 3, Docket No. 167. The Amended Plan payments are between $5,911.79 per quarter (or $1,970.59 per month) and $10,722.39 per quarter (or $3,574.13 per month). *Id*. at Ex. 2. Once the Plan payments increase to $8,072.72 per quarter in June 2024, ($2,690.90 per month), and thereafter increasing steadily up to $10,722.39 per quarter ($3,574.13 per month), the Debtor will not have the income with which to make the Plan payments. *Id*.

Further, the Debtor's Amended I and J and his MOR's do not support the consulting income in the Plan of $1,500.00 per quarter, without which the Amended Plan is doomed from the start. *Id*. at Ex. 4. The Debtor testified that he has not received any consulting income since February 2022. He further testified that he needed to devote 100% of his time and efforts to his new employment.

The "other" income of $6,068.00 in the Amended Plan quarter equates to $2,022.00 per month. *Id*. at Ex. 2. Yet, the Debtor had only $761.83 in dividends per month ($9,142.00 divided

13

by 12) in 2021, and $1,460.50 in dividends ($5,842.00 divided by 4) in 2022. Am. Schedules/Statements at 2, Docket No. 158. None of the MOR's to date in the case indicate the receipt of any investment income. The Debtor does not have the ability to make the Dividend payments to the unsecured creditors under the Amended Plan.

The Court finds that the Debtor's Amended Plan cannot be confirmed because it is not feasible. 11 U.S.C. §§ 1181(a), 1129(a)(11), 1191(c)(3).

(ii)    *The Debtor's Lack of Good Faith*.

Finally, the Court turns to the good faith requirement for confirmation. 11 U.S.C. §§ 1181(a), 1129(a)(3). The Debtor's Amended Plan is a liquidating plan. (Docket No. 167). Other than the liquidation of the Debtor's membership interests and the potential litigation claims (all of which are of questionable value), the Debtor proposes to pay his priority claims in full, and to make a distribution to his unsecured creditors of *one and a half cents on the dollar* over a five-year period. *Id*. This is, for all intents, a meaningless distribution to the unsecured creditors.[10]

The Fourth Circuit has held that the prospect of a substantial repayment to creditors is not required, at least in the Chapter 13 context. *In re Deans,* 692 F.2d 968. At the same time, the Fourth Circuit noted: "Failure to provide substantial repayment is certainly evidence that a debtor is attempting to manipulate the statute rather than attempting honestly to repay his debts." *Id*. at 972. The prospect of a meaningful distribution is one factor to be considered in deciding whether a plan has been proposed in good faith. *Id*. At a minimum, the prospect of a distribution to the creditors of one and a half cent on the dollar over five years is not a reason to keep this case in Chapter 11.

---

[10] Using the proposed distribution of 1.5 cents on the dollar and dividing that dividend by the 20 quarterly payments in the Amended Plan, the creditors can expect to receive 0.00075 cents on the dollar, or less than one-tenth of a cent, on their claims per quarter. (Docket No. 167).

14

There is no reason that this case should remain in Chapter 11. The Debtor's domestic support obligations and his tax debt are both non-dischargeable and will be non-dischargeable be under Chapter 7 as well.[11] His Plan, as noted, is a liquidating plan. There are no employees or jobs to save. The Debtor is now employed as a W-2 employee. The proposed distribution to the unsecured creditors is so *de minimis* that it can accurately be described as meaningless.

The Court finds that the Debtor's Plan cannot be confirmed because it fails the good faith requirement of 11 U.S.C. §§ 1191(a) and 1129(a)(3).

C.  *The Appropriate Remedy.*

When the Court finds that there is cause, it must determine whether conversion or dismissal is in the best interests of the creditors. *In re Superior Siding & Window, Inc.,* 14 F.3d 240, 242 (4th Cir. 1994). The Court finds that a conversion to Chapter 7 is in the best interests of the creditors. 11 U.S.C. § 1112(b)(1). A dismissal without prejudice would only invite the Debtor to file the same case a second time. There would be no resolution of the creditors' claims outside of bankruptcy. The bankruptcy estate has potential claims against the Trust and the Debtor's ex-wife arising out of the transfers of: (a) the transfer of 1300 Cabin Creek Road in Herndon (where the Debtor now resides); (b) the transfer of a fractional interest in 2208 Jenson Place also in Herndon; and (c) the transfer of $300,000.00. Schedules/Statements at 10, Docket No. 46. The Bankruptcy Code provides for remedies that are not available outside of a bankruptcy case. 11 U.S.C. §§ 544, 547, 548, and 550. The Court makes no assumptions or conclusions regarding the viability or the value of these claims. However, a Chapter 7 Trustee can evaluate the claims objectively and pursue them if they are available for the benefit of the creditors.

---

[11] 11 U.S.C. §§ 523(a)(5) and (a)(1).

15

Finally, the Court finds that there are no unusual circumstances that would cause it to find that a conversion is not in the best interests of the creditors. 11 U.S.C. § 1112(b)(2).

On balance, the Court finds that a conversion to Chapter 7 is in the best interests of the creditors.

## Conclusion

The Court, therefore, will enter a separate Order under which the case will be converted to Chapter 7.

Date: Sep 7 2022

Alexandria, Virginia

/s/ Brian F Kenney

The Honorable Brian F. Kenney
United States Bankruptcy Judge

Entered On Docket: September 7, 2022

Copies to:

Bin Hao
13008 Cabin Creek Rd.
Herndon, VA 20171
*Subchapter V Debtor*

Angela L. Shortall
111 S Calvert St., Suite 1400
Baltimore, MD 21202
*Subchapter V Trustee*

John P. Forest, II, Esq.
11350 Random Hill Rd, Suite 700
Fairfax, VA 22030
*Counsel for Subchapter V Debtor*

Jack Frankel, Esq.
1725 Duke St, Suite 650
Alexandria, VA 22314
*Office of the U.S. Trustee*